IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| BRET MOULTON,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL ASTRUE,<br><br>Defendant. | **REPORT AND RECOMMENDATION**<br><br><br>Case No. 2:11-cv-623 CW<br><br>Magistrate Judge Samuel Alba |

Plaintiff Bret Moulton has filed suit asking the court to reverse the final agency decision denying his application for Disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.   The Administrative Law Judge ("ALJ") found that Moulton is not disabled because he is capable of performing his past relevant work as an economist, as well as other work.  Moulton now challenges the ALJ's decision by arguing that it is legally erroneous and not supported by the substantial evidence.  Specifically, Moulton argues that the ALJ improperly evaluated the medical opinion evidence as well as Moulton's own credibility.

Having carefully considered the parties' memoranda and the complete record in this matter, the undersigned United States Magistrate Judge recommends that the Commissioner's decision be reversed and remanded for reconsideration.

1

### THE ALJ'S DECISION

Moulton filed an application for DIB on July 31, 2008, alleging disability beginning November 2, 2006. An administrative hearing, at which Moulton testified, was held January 26, 2010. Following the hearing, the ALJ denied Moulton's claim, finding that he was capable of performing past relevant work as an economist, as well as sedentary unskilled work such as jewelry stringing.

The ALJ followed the five-step sequential evaluation process for evaluating disability claims. First, the ALJ found that Moulton had not engaged in substantial gainful activity since his alleged date of disability. Second, the ALJ found five severe impairments: fibromyalgia, degenerative disc disease, gastroesophogeal reflux disease, depression, and anxiety. Administrative Record ("Record") at 18, Dkt. No 8 (Sept. 14, 2011). Third, the ALJ determined that Moulton did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Following this analysis, the ALJ determined that Moulton had the residual functional capacity to perform a full range of sedentary work, with a sit-stand option. With this finding, the ALJ determined at step four of the analysis that Moulton could return to past relevant work as an economist. The ALJ alternatively determined that Moulton was capable of performing a variety of sedentary work which existed in significant numbers in the national economy, including as a jewelry stringer.

In light of these findings, the ALJ denied Moulton's claim on April 23, 2010. Moulton appealed this request on June 18, 2010, but his request for review was denied by the Appeals Council on May 27, 2011. Moulton then filed suit in this court on July 5, 2011. The issue has

2

been fully briefed, and no oral argument was requested. The case has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). Dkt. No. 13 (Sept. 26, 2011).

Moulton argues that the ALJ erred in reviewing his claim because the ALJ: (1) failed to properly evaluate Moulton's credibility and (2) did not properly evaluate the medical opinions, give controlling weight to the opinions of Moulton's treating sources, or explain the weight being given to the opinions of other physicians.

## STANDARD OF REVIEW

The court reviews the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (internal quotations and citations omitted). "A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks omitted).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Rather, it is to "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

## CREDIBILITY

Moulton challenges the ALJ's finding that Moulton was not credible. Moulton argues this determination was based on speculation and was not supported by substantial evidence.

"Credibility determinations are peculiarly the province of the finder of fact, and [this court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Although credibility findings must be "affirmatively linked to substantial evidence and not just a conclusion in the guise of findings," *id.*, "[c]redibility is the province of the ALJ." *Hamilton v. Secretary of Health and Human Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1999). Therefore, where the ALJ has given specific, legitimate reasons for disbelieving a claimant's testimony, the federal courts should "generally treat credibility determinations made by an ALJ as binding upon review." *Gosset v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988).

The ALJ in this case found "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Record at 22. The ALJ supports this finding with a discussion of many perceived discrepancies in Moulton's explanations of his symptoms and abilities. For instance, Moulton "and his wife testified that he is very limited in his activities at home, but he told his rheumatologist that he worked at home as an illustrator 4–5 hours a day." Record at 23. The ALJ also suggests that Moulton's account of his abilities did not comport with the observations of treating medical professionals. *Id.*

The ALJ particularly focused on the termination of Moulton's earlier disability benefits. As the ALJ observed, at the hearing Moulton "testified he was trying to exercise and they saw

4

him on a bicycle and stopped payments. But he originally told his doctor that the insurance company videotaped him participating in a long bicycle race." *Id.* The ALJ rejected Moulton's explanation that the race had been on an "unusually energetic day" noting that bicycle races are scheduled in advance and usually require previous training. *Id.*

Plaintiff has not shown that the specific reasons listed by the ALJ to support his decision are not legitimate, and the court's review of the record reveals that they are properly supported. Therefore, because the ALJ supported his credibility determination with specific, legitimate reasons, the court should not disturb that holding on review.

## WEIGHT

Generally, an ALJ must give more weight to the opinions of a claimant's treating sources than to the opinions of nontreating sources. *See* 20 C.F.R. § 404.1527(c)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the "treating source's opinion on . . . the nature and severity" of the health issues "[1] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [2] is not inconsistent with the other substantial evidence in [the] case record," that opinion is given controlling weight. 20 C.F.R. § 404.1527(c)(2); *see also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

When a treating source's opinion does not meet these two criteria, and for all non-treating source's opinions, weight is determined by the supportability of the opinion, the consistency of the opinion with the record, the specialization of the source, and "other factors," including how familiar the source is with other information in the case record. 20 C.F.R. § 404.1527(c)(3)–(6). For a treating source, the ALJ is also to consider length of treatment, frequency of examination, and the nature and extent of the treatment relationship. *Id.* at (c)(2).

Moulton argues the ALJ erred in not giving controlling weight to the opinions of his two treating physicians, Drs. Johnson and King, and in not explaining what weight was given to the opinion evidence two non-treating physicians, Drs. Allen and Swaner. These arguments will be evaluated in turn.

## A.    Controlling Weight

The ALJ declined to give controlling weight to the opinions of Dr. Johnson and Dr. King, Moulton's treating physicians. Both doctors diagnosed Moulton with fibromyalgia in reliance on Moulton's own description of his symptoms, tests which ruled out other conditions, and positive results on trigger point tests. Both doctors also indicated that Moulton's physical abilities were significantly limited in ways which might preclude full-time employment. *See, e.g.,* Record at 616 (Dr. King observing Moulton would need to take frequent three to five ten minute unscheduled breaks a day); *id.* at 598 (Dr. Johnson opining Moulton would need three to four twenty or thirty minute breaks a day); *id.* at 71 (vocational expert testifying taking eight ten minute breaks, spread out over a work day, would prevent a person with Moulton's limitations from holding a full-time job).

The ALJ characterized Dr. King's opinion that Moulton has possible fibromyalgia as "disingenuous," and states the doctor's records "appear to be an effort to document significant sounding medical problems that are not supported by any test results, radiological data, or examination findings."[1] *Id.* at 24. The ALJ also stated "I do not find credible support for [Dr.

---

[1]  Plaintiff argues that this statement was in error because Dr. King's diagnosis of fibromyalgia was supported by trigger test stress results. The ALJ discusses these test results in other portions of the decision, however, Record at 24, and ALJ does not question that Moulton may suffer from fibromyalgia, *id.* at 18. Rather, he disagreed with Dr. King in finding that

Johnson's] conclusions any more than those of Dr. King." *Id.* at 25. In evaluating the credibility

of Moulton's treating physicians, the ALJ also discussed that another physician, Dr. Taylor, had

referred Moulton to Dr. King in the context of documenting disability. *Id.* at 24, referring to *id.*

at 358 (Dr. Taylor stating "there is very little we can document about that disability. . . . I

suggested that [Moulton] see Dr. King if he wants to document disability"). Additionally, the

ALJ noted that Dr. Johnson and Dr. King had relied on Moulton's representations concerning his

pain and abilities, which the ALJ did not find credible. *Id.* at 24.

"In choosing to reject [a] treating physician's assessment, an ALJ may not make

speculative inferences from medical reports and may reject a treating physician's opinion

outright only on the basis of contradictory medical evidence and not due to his or her own

credibility judgments, speculation or lay opinion. *Langley v. Barnhart*, 373 F.3d 1116, 1121

(10th Cir. 2004). The ALJ's statements that Dr. King's opinion was "disingenuous" and

suggestion that Dr. Johnson and Dr. King were mischaracterizing Moulton's symptoms to

document disability constitute credibility judgments of the physicians. Insofar as this relied on

speculation about motive, and not conflicting medical evidence, it was not proper to consider.

The ALJ was not required to give controlling weight to the opinions of Dr. Johnson and

Dr. King to the extent that they were not well-supported or conflicted with other evidence. He

was not permitted, however, to consider the credibility of Dr. Johnson and Dr. King in

disregarding their opinions. Because it is unclear the extent to which his decision to give these

opinions little weight was based upon these credibility determinations, as opposed to a finding

---

Moulton's fibromyalgia did not cause certain physical limitations, an issue that was not
medically tested. *Id.* at 24.

that they were not well-supported by medically acceptable clinical and laboratory diagnostic

techniques and inconsistent with the other substantial evidence, the case should be remanded for

further consideration.

**B.     Explanation of Weight**

The Tenth Circuit has held "an ALJ must give good reasons in [the] decision for the

weight assigned to a treating physician's opinion," and "the notice of determination of decision

must be sufficiently specific to make clear to subsequent reviewers the weight the adjudicator

gave to the treating source's medical opinion and the reasons for the weight." *Watkins v.*

*Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Furthermore, when a treating source is not

given controlling weight, the ALJ must also explain the weight given to the opinions of the non-

treating sources which have evaluated the claimant. 20 C.F.R. § 416.927(f)(2)(ii). Failure to

include these "necessary findings" precludes proper review of the decision and requires that the

case be remanded. *Watkins*, 350 F.3d at 1300.

As explained above, the ALJ did not give controlling weight to the opinions of two of

Moulton's treating sources. Therefore, the ALJ was required by law to explain the weight given

to the opinions of non-treating sources. Moulton alleges the ALJ failed to explain the weight

being given to two of these sources, Dr. Allen and Dr. Swaner.

Moulton was referred to Dr. Allen for a consultative mental exam as part of his

application for DIB. Dr. Allen diagnosed Moulton with a depressive disorder and an anxiety

disorder. Record at 492. She observed Moulton had impaired concentration and attention skills.

*Id.* at 490. As the vocational expert testified at the administrative hearing, if the ALJ had

8

accepted this limitation, Dr. Allen's opinion would have ruled out work as an economist. *Id.* at 69–70.

The decision issued by the ALJ, however, does not explicitly address Dr. Allen's opinion or explain what weight, if any, is given to it. The Commissioner argues that "it is evident from the ALJ's decision that he gave significant weight to the opinions of Dr. Allen." Defendant's Answer Brief at 16, Dkt. No. 16 (Dec. 12, 2011). The ALJ's findings do substantially mirror Dr. Allen's opinion. For instance, Dr. Allen found that Moulton's "abilities to concentrate, attend, and do simple math are in the low average range" and that his "attention and concentration skills appear below his apparently good/average general cognitive skills." Record at 490, 492. The ALJ, in turn, found Moulton "has mild to moderate limitation in ability to concentrate." *Id.* at 20. The ALJ decision discusses and quotes the findings of Dr. Allen. *Id.* at 25. Though the ALJ does not mention her by name, his incorporation of her opinion into his findings is "sufficiently specific to make clear to subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

The ALJ also failed to weight the opinion of Dr. Swaner, a psychologist, who was called to testify as a medical expert at the ALJ hearing on the subject of Moulton's mental limitations. Dr. Swaner testified that Moulton had a moderate impairment in his ability to function socially or maintain concentration, persistence or pace. *Id.* at 39. He also testified that, when his mental impairments were evaluated in combination with his physical pain, Moulton had "marked" impairments. *Id.* at 39–40.

9

Dr. Swaner's opinion is not addressed in any portion of the decision. As the Tenth Circuit observed, this error leaves a reviewing court unable to fairly evaluate whether the decision to diverge from his opinion rests upon substantial evidence. The Commissioner argues this was a harmless error, but Dr. Swaner found "moderate" impairments in areas where the ALJ ultimately concluded Moulton only had "mild" limitations. *Compare id.* at 39 (Dr. Swaner observing moderate difficulties in social function and concentration) *with id.* at 20 (ALJ finding Moulton has mild to moderate difficulties in concentration and mild limitations in interacting with the general public). Such a difference can impact the outcome of an application for DIB, and the ALJ's failure to address Dr. Swaner's opinion is an error that necessitates the case be remanded.

## RECOMMENDATION

As explained above, while the ALJ's determination of Moulton's credibility was supported by substantial evidence, it did not properly evaluate the medical opinion evidence. The ALJ relied upon credibility determinations in disregarding the opinions of Moulton's treating physicians, and did not sufficiently explain what weight was given to the opinion of Dr. Swaner. Therefore, it is recommended that the Commissioner's decision be REVERSED and the case be REMANDED for further consideration.

DATED this **24** day of April, 2012.

BY THE COURT:

10

Samuel Alba

United States Magistrate Judge

11